**THE COLUMBUS TITLES, Inc v THATCHER et**

Ohio Appeals, 2nd Dist, Franklin Co

No 2987. Decided February 23rd, 1939

Carl H. Valentine, Columbus, for plaintiff-appellant.

Ralph J. Bartlett, Prosecuting Attorney, Columbus, Robert P. Barnhard, Columbus, and E. B. Paxton, Asst. Pros. Attys., Columbus, for defendant-appellee.

## OPINION

By GEIGER J.

The plaintiff below filed its petition alleging that it is the owner and in actual possession of certain real estate situated in the County of Franklin; that it acquired its title to all of said real estate except a single lot from the state of Ohio by deed executed by the Auditor of Franklin County, pursuant to the provisions of §5755 GC. Said deeds were made during the month of May and June, 1937.

It is alleged that there are being carried by the defendants on the tax duplicate and upon the books of the auditor and treasurer of Franklin County, Ohio, as due and unpaid and as a lien on said premises, charges for taxes for the year 1936, charges for special assessments alleged to have been re-assessed by the city of Columbus and charges for special assessments levied prior to the proceedings by which said real estate was forfeited to the state of Ohio for nonpayment of taxes and assessments, and not re-assessed.

The petition sets out for each parcel of land the amount of each item of taxes, re-assessments and assessments.

Plaintiff prays that defendants be enjoined from attempting to collect and from carrying on the tax books any of the aforesaid charges and that the claims be adjudged null and void and that the plaintiff's title be quieted.

After a demurrer to this petition was filed and overruled a joint answer of the two defendants was filed admitting certain matters, among them that the plaintiff acquired title to the parcels of land described, in the way and manner set forth in the petition, and they admit that they are carrying on the records of their respective offices the properties described, for the purpose of taxation and that they claim as taxes the amount set out under each parcel in the plaintiff's petition. They allege that the amount of taxes, assessments and reassessments of which the plaintiff complains, were not taxes, assessments and reassessments in arrears within the purview of the statute at the time of the forfeiture sale.

A reply is filed denying the allegations of the answer.

Trial was had and judgment in favor of defendants. Motion for a new trial overruled and notice of appeal given on questions of law and fact.

There is no dispute as to the facts. The questions presented for our determination are,

(1) When real estate is forfeited to the state for nonpayment of taxes and assessments for previous years, does the state's lien for taxes for the year of forfeiture attach and does it survive a sale by the state through the auditor under the provisions of §5755?

(2) Does the lien created through special assessments by a city for deferred installments, not yet due at the time of such forfeiture survive the sale and remain a charge against the property?

(3) In the case of installments of a special assessment past due and unpaid prior to the time of the forfeiture and sale but with reference to which reassessments have been had prior to the forfeiture, does such reassessment constitute a new lien and if so does this survive the forfeiture and sale?

The pleadings present to the Court questions which must be decided in conformity to the statutory provisions in force controlling such sales.

Most of these statutes may be found in Chapter 14, Delinquent Lands, beginning at §5704, GC, and extending to 5727, and Chapter 15, beginning at §5744, GC, and continuing to §5773, GC. Without attempting to segregate the provisions under their appropriate statutory number we will briefly state their general tenor.

### Chapter 14: Delinquent Lands.

Immediately after the August settlement the auditor shall certify a list of all delinquent lands in his county. Such list shall contain the amount of taxes, assessments and penalty thereon due and unpaid together with the amount of interest to the date of such settlement. Interest at the rate of 8% on the amount of taxes and assessments due and unpaid, shall be charged from the date of such settlement. Delinquent lands shall mean all lands upon which taxes, assessments and penalties, or either remain unpaid at two consecutive semi-annual tax settlements. The state shall have the first and best lien on the lands described in the list for the amount of taxes, assessments and penalties and accrued interest charged prior to the delivery of such list. If the taxes have not been paid for three consecutive years after certification the state shall have the right to institute foreclosure proceedings thereon.

The auditor shall enter on the tax list the word "delinquent" and such entry shall be deemed to be notice to purchasers acquiring any right or interest in the land of the prior right and lien of the state. If such lands have been transferred the entry "delinquent" shall follow the land unless the taxes together with interest due have been

paid. No proceedings in foreclosure shall be instituted on delinquent lands unless the taxes, assessments, penalties and interest have not been paid for three consecutive years. At the expiration of three years the auditor shall make delinquent land tax certificates of each delinquent tract of land upon which the taxes, assessments, penalties and interest have not been paid, describing the amount of taxes, assessments, penalties and interest thereon due and unpaid. It is the duty of the prosecuting attorney upon delivery of the delinquent land tax certificate to institute a proceeding to foreclose the lien of the state within nine months thereafter unless the taxes, etc., and charges are sooner paid. A finding shall be entered of the amount of the taxes, etc., as are found due and unpaid, and from the proceeds of the sale costs shall first be paid, next the amount found due for taxes assessments, penalties, interest and charges, next the amount of any taxes and assessments accruing after the entry of the finding and before sale, all of which be deemed satisfied though the amount applicable be deficient, and the balance shall be distributed according to law. No tax certificate shall be invalid for reasons named if the taxes, assessments, penalties and interest set forth in said certificates were due and unpaid at that time. All delinquent land upon which taxes have become delinquent may be redeemed at any time by tendering to the county treasurer the amount due and unpaid.

## Chapter 15. Forfeited Lands.

Every tract not sold for want of bidders shall be forfeited to the state. Thenceforth all the right, title, claim and interest of the former owner shall be considered as transferred to and vested in the state. The county auditor shall return the separate list of lands so forfeited with the description thereof and the amount of taxes, assessments, penalties and interest due thereon, to the auditor of state and all such lands shall be preserved on the tax lists until sold or redeemed and taxes and assessments thereon regularly assessed in the name of the state. If the former owner of the land which has been forfeited at any time before the state has disposed of such land shall pay all the taxes, assessments, penalties and interest due thereon at the time of such forfeiture with interest which has since accrued, the state shall relinquish to such former owner all claim to such land.

We come now to the disputed §5755, GC, which provides that if a tract of land does not sell at public sale for an amount sufficient to pay the taxes, assessments, penalties and interest which stand against it the commissioners, if in their opinion the land is of less value than the amount of taxes, assessments, penalties and interest due upon it, may order the auditor to offer it for sale at the next regular sale of forfeited lands and sell it to the highest and best bidder irrespective of the amount of taxes, assessments, penalties and interest due upon it. "Such sale shall convey the title to the said tract or parcel of land divested of all liability for any arrearages of taxes, assessments, penalties and interest which remain after applying the amount thereon for which it was sold."

Sec. 5762, GC, provides that the county auditor on making a sale of a tract of land to any person shall give to such purchaser a certificate thereof and deliver to the purchaser a deed therefor in due form which shall be prima facie evidence of title in the purchaser. The purchaser of such lands from the day of such purchase shall be held in all the courts as the assignee of the state of Ohio. The amount of taxes and penalties charged on the land at the time it was sold with all legal taxes afterwards paid thereon by such purchaser shall be a lien on it. When the claimant of any land sold for nonpayment of taxes, assessments, penalties, interest, and costs recovers the lands by reason of invalidity of sale, such claimant shall refund to the purchaser the amount of the taxes, assessments, interest and costs due to the state on the lands when sold with all other taxes paid thereon by the purchaser to the time of such recovery. Such sum shall be paid to such purchaser before he shall be evicted or turned out of possession.

We have given a resume of both Chapters 14 and 15 to determine if we can just what effect is had upon the title to the property by the proceedings provided for in Chapters 14 and 15. There runs through the sections the phrase "due and unpaid", "at the time" or a phrase of similar import. "Due and unpaid" or "due" have an important place in the statutes in both chapters. The claim is made by the plaintiff and asserted with considerable ingenuity that when a title for real estate has been forfeited for nonpayment of taxes and the state through the machinery provided makes a deed for such land that the land so conveyed by such deed shall be clear and free not only from the taxes and assessments of previous years, but for the lien for the year of forfeiture and not only as to the installments of the special assessments which were due and payable at the time of the forfeiture or sale but those assessments which

were not due and the payment for which in ordinary cases might extend over a considerable number of years. We are convinced by the reading of the ██ statute that the state had no intention of forfeiting the land for other than taxes and assessments then due or which may have become due after a delinquency but before the sale. This is emphasized by a repeated designation in the statutes as to the tax or assessment claimed for which the forfeiture is made and which is a lien to be foreclosed by the action of the prosecuting attorney. When the land is redeemed by its former owner he is required to pay those portions of the tax and assessment which were due at the time of the sale with such increment as the statute provides. We see no purpose in the state forfeiting real estate and causing its sale in order to bring into the treasury only the taxes that are due and unpaid but in addition thereto causing actual loss to the state for taxes that were not due, and could not be the source of the lien to be foreclosed. As to assessments the point seems even more clear to us. We ██ can conceive that an addition is laid out by enterprising real estate agents who improve the property with sidewalks, curbs, gutters, sewers and it is possible, hard surfaced streets. If, during a depressed period, the taxes become delinquent and the property be forfeited and afterwards sold under §5755, GC, the purchaser for an insignificant sum representing the taxes that are due and payable would secure an addition highly developed with expensive improvements, the money required for the payment of which would ordinarily flow into the county or city treasury in annual amounts. If this method of dealing with delinquent taxes were in vogue, the shrewd real estate dealer could lay out an expensive city addition and by the machinery of a tax sale to a related corporation secure the cancellation of all the construction obligations that he may have assumed or the city assumed for him. This would necessarily result in a severe loss to the city t the bonds were issued to be paid by it or to the contractor, if no bonds have been issued. It is claimed that by virtue of §5755, GC in the interpretation given to us by counsel for the plaintiff that the sale should convey title divested of all liability for taxes, assessments and penalties instead of for any arrearages of taxes, assessments and penalties.

The transaction revealed by the pleadings in this case demonstrates what may be the result of the claim asserted by plaintiff. The figures reveal that the plaintiff purchased 33 parcels of real estate paying therefor $1096.00. This real estate is on the tax duplicate at the valuation of $12,300.00. The taxes which became due after the forfeiture of the property for nonpayment of taxes amounted to $232.99. The assessments which were a lien upon the real estate but no part of which was due at the time of the sale amount to $14,752.84. This amount is that remaining due after the cancellation of the installments due at the time of the sale. The net result of the transaction as claimed by plaintiff would be the acquisition of property having a tax value of $12,300.00, partly due to the improvements and a cancellation of $14,752.84 of improvement assessments, being a total of $24,052.84, for which plaintiff has paid $1096.00. We have no quarrel with the attempt to get this property free from the assessments, but only point out the inequitable result of its claim. Every care has been taken by the drafters of the law to preserve the liens and taxes which were not due and payable at the time of the delinquency or of the sale.

Counsel especially urge that as to reassessments their claim should be supported for the reason that the annual payment of these assessments was due and payable and that therefore under the provisions of §5755, GC, that the sale by the auditor should convey the title divested of all liability for any arrearages of these assessments and that there is no authority to postpone the payment of that portion of the assessment which was as a matter of fact due and payable. They assert that the re-assessment does not release the original lien or create a new lien. This re-assessment is made by virtue of §2293-5j, which provides that the taxing authority may reassess against each lot upon which the original assessments were levied and are due and unpaid, the unpaid part of the installment, and that whenever any annual assessment installment has become due and remains unpaid, the taxing authority may from time to time re-assess against each lot upon which the original assessments were levied and are due and unpaid the due and unpaid part thereof, said re-assessments being payable beginning at the tax-paying period immediately following the tax-paying period at which the last installment of the original assessment will be due and payable. In other words, power was given to the taxing authorities where assessments have not been paid, to reassess them and make them due and payable at a period beginning after the payment of

# 508

the last installment of the original assessment. This transaction might be likened to the renewal of a promissory note which had become due and payable. The new note is not due and payable except in accordance with its terms, and so the reassessed assessments are not due and payable until after the original assessments have been paid, which clearly takes them out **Headnote 3.** of the provision of the statute that the tax sale shall convey the title divested of all liability for arrearages of taxes. These re-assessments were made before the forfeiture and a year and a half before the sale.

Counsel for plaintiff has made much of the argument that when the state takes over the forfeited lands that the same become free from all liens. §5745, GC, provides that a list of all forfeited lands, together with the taxes due thereon shall be certified to the auditor of state and preserved upon the tax duplicate until sold or redeemed, and the taxes and assessments thereon regularly assessed in the name of the state, which shall be returned annually by the county treasurer as delinquencies. It would seem that from the very provision of the statute the forfeited lands are to be subject to future taxes, even while certified to the state auditor, seeming to combat the theory of counsel that such forfeited lands escheat to the state and become its property, not subject to taxes.

We have been at some length in this decision because of its importance. We arrive at the conclusion that the Court below did not err in its judgment. Judgment affirmed. Cause remanded.

HORNBECK, PJ, and BARNES, J concur.